# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

_____
                                        :
LOWILLIS JOHNSON,                       :
                                        :
            Plaintiff,                  :               Hon. Dennis M. Cavanaugh
                                        :
      v.                                :               **OPINION**
                                        :
                                        :               Civil Action No.: 04-5327
                                        :
COMMISSIONER OF SOCIAL                  :
SECURITY,                               :
                                        :
            Defendant.                  :
_____:


<u>DENNIS M. CAVANAUGH, U.S.D.J.</u>

This matter comes before the Court upon Plaintiff Lowillis Johnson's ("Plaintiff") appeal from the Commissioner of the Social Security Administration's ("Commissioner") final decision denying her request for Disability Insurance Benefits ("DIB"). The Court has jurisdiction to review this matter under 42 U.S.C. §§ 405(g) and 1383(c)(3) and decides this matter without oral argument. See Fed. R. Civ. P. 78. The record provides substantial evidence supporting the Commissioner's decision that Plaintiff was not disabled. Accordingly, the Commissioner's decision is affirmed.

## I. <u>Background</u>

### A.  Procedural History

Plaintiff filed an application for DIB on June 26, 2002. (R. 48-50.) Her claims were denied initially and upon reconsideration. (R. 24-28, 35-37.) Plaintiff timely filed for a hearing before an Administrative Law Judge. (R. 38.) Administrative Law Judge Ralph J. Muelig ("ALJ") presided

over the hearing on April 19, 2004.  (R. 176-207.)  The ALJ issued a decision on April 20, 2004,

denying Plaintiff's application.  (R. 12-21.)  Plaintiff timely filed a Request for Review with the

Social Security Administration's ("SSA") Appeals Council.  (R. 10-11.)  The Appeals Council

denied Plaintiff's request for review on October 1, 2004.  (R. 4-6.)  Upon that denial, the ALJ's

ruling became the Commissioner's final decision.  (R. 4-6.)  Plaintiff thereafter filed this action

challenging the final decision on October 29, 2004.

### B.  Factual History

Plaintiff is a 64 year-old female born on March 5, 1942.  (R. 48.)  She has a twelfth grade

education.  (R. 65.)  Plaintiff worked as a telephone operator for almost thirty-nine years at Verizon,

who paid her disability benefits until she retired in September 2001.  (R. 60, 73, 178-89.)  Her duties

at Verizon required her to sit at a computer and answer telephone calls for six hours per day but did

not require her to lift or carry any objects.  (R. 73.)  She testified that she was unable to return to her

past work because she had trouble sitting, climbing stairs, and walking.  (R. 183).

On February 10, 2000, Plaintiff was examined by Mark Friedman, M.D.  Dr. Friedman

observed that Plaintiff's cervical spine revealed normal range of motion (ROM) with no appreciable

paraspinal muscular spasm or vertebral tenderness.  (R. 142.)  The thoracic and lumbar spine had

spasm and tenderness aggravated by movement.  Id.  Movement was reduced by twenty-five percent

in all directions.  Id.  Pain radiated down the left sciatic distribution and there was pain on straight

leg raising on the right at approximately fifty degrees.  With respect to the right and left upper

extremities, Dr. Friedman noted that Plaintiff's shoulders had full ROM in forward flexion, backward

elevation, abduction, and internal rotation.  Id.  There was full ROM in the wrists and the joints of

the hand with normal muscle strength and tone of the deltoid, biceps, triceps, forearm muscles, and

intrinsic muscles of the hand.  Plaintiff had no atrophy and her sensations were normal.  The biceps and triceps reflexes were within normal limits.  The bilateral shoulders, wrists, elbows and hands had normal ROM, and strength was intact with normal sensation.  Deep tendon reflexes of the biceps, triceps and brachial radialis were physiologic.  Id.  With respect to Plaintiff's right and left lower extremities, Dr. Friedman noted that Plaintiff walked with a limp that favored her right leg.  Id.  There was pain on extension of the hip on the left and in the lower back.  Id.  Reflexes were symmetrical and of good quality.  Id.  There was no impairment of strength but there was impairment of use due to the pain that went down the right sciatic distribution.  Id.

Dr. Friedman diagnosed severe sprain and strain to the lumbosacral area.  (R. 143.)  Although the examination of the cervical spine was negative, Dr. Friedman opined that she may have a strain and sprain to the cervical spine, noting that Plaintiff was complaining of neck pain, and diagnosed severe sprain and strain to the lumbosacral area.  Id.  He observed evidence of radiculopathy down the left leg and sciatic nerve irritation.  Id.  Dr. Friedman recommended rest and physical therapy, and prescribed Darvocet-N100.  Id.

On September 18, 2001, an MRI scan of Plaintiff's lumbosacral spine revealed slight degenerative anterior spondylolisthesis of L3 on L4 with associated degenerative disc disease at L3-L4 and small annular bulges at both levels.  (R. 138.)  Facet hypertrophic changes were also present bilaterally at both levels with no significant interspinal encroachment.  Id.

On September 28, 2001, Dr. Friedman observed that Plaintiff was responding to physical therapy.  (R. 137.)  Plaintiff's strength, endurance and ROM had increased, although she continued to have impairment in areas of the back on activity and also pain in the left knee and neck.  Id.  The doctor opined that with four more weeks of therapy, Plaintiff would reach maximum benefit and then

continue on her own.  Id.

On October 12, 2001, Plaintiff reported to Dr. Friedman that she was feeling well.  (R. 137.)
Dr. Friedman noted that Plaintiff had progressed well with physical therapy.  Id.  Also, Plaintiff told
Dr. Friedman that she was retired and not interested in returning to work.  Id.  He discontinued
treatment and physical therapy.  Id.

On January 18, 2002, Plaintiff complained to Dr. Friedman of back pain, for which he
recommended physical therapy.  (R.136.)  On October 31, 2002, Plaintiff reported she was doing
better and continuing physical therapy.  (R. 146.)  Dr. Friedman assessed that Plaintiff was finished
with physical therapy and recommended that she exercise at home.  Id.  On December 2, 2002,
Plaintiff again reported that she was doing better.  (R.145.)

In a letter to Dr. Friedman dated April 28, 2002, Dr. Charles Kalko indicated that he saw the
claimant on April 8, 2002 for an initial neurosurgical consultation and comprehensive examination.
Dr. Kalko's impression was Lumbar Radiculopathy-Left L5 and he recommended a lumber CT
myleogram.

Dr. John M. Sawicki, an orthopedist, conducted a consultative examination of Plaintiff on
April 9, 2003.  (R.155-59.)  Dr. Sawicki observed that Plaintiff's gait was normal and she was able
to perform transfers. (R.156, 157).  There was no paraspinal tenderness of the cervical spine but
Plaintiff reported left paraspinal lumbar pain.  (R.156.)  ROM was limited in both the lumbar spine
and cervical spine. (R.156, 159.)  Plaintiff stood on her heels and toes, and squatted.  Her muscle
strength was full at 5/5.  Straight leg raising in the seated position was to eighty-five degrees, negative
bilaterally.  Id.  Plaintiff's shoulders had a full ROM in forward elevation, abduction, adduction, and
internal and external rotation. (R.156,158.)  ROM of her elbows was to 140 degrees in flexion and

4

extension. Id. Supination and pronation were full. (R.156.) Plaintiff's wrists had full ROM, and her hands had full ROM with full grip strength and pinch strength. (R.156,158.) Bilateral triceps and biceps reflexes were within normal limits. (R.156; 158). Abduction, adduction, internal rotation and extgernal rotation were at 40 degrees bilaterally. ROM in the knees was at 125 degrees in flexion and extesnion, while ROM in the feet and ankles was full. Bilateral patellar and Achilles reflexes were within normal limits. (R.156.)

On April 11, 2002, Dr. Lilia Pineda, a state agency medical consultant, reviewed Plaintiff's medical records and assessed her physical residual functional capacity. (R.160-67). Dr. Pineda assessed that Plaintiff could lift/carry twenty pounds occasionally, and ten pounds frequently. (R.161.) During an eight-hour workday, Plaintiff could sit, stand, or walk for about six hours, and her ability to push/pull was limited only by her ability to lift/carry. Dr. Pineda noted Plaintiff's allegations of constant pain in the lower back and her history of motor vehicle accidents. Id. She also noted Plaintiff's September 2001 MRI scans of the lumbar spine, her conservative, non-operative treatment, full muscle strength, and negative straight-leg raising. (R.162.) Plaintiff had occasional procedural limitations. Id. Dr. Pineda assessed that while there was some credibility to Plaintiff's symptomatology, the severity of her impairment did not meet or equal the level of severity required by Listings. (R. 165.)

Dr. Marvin Chirls, an orthopedic surgeon, testified on behalf of the SSA. He stated that Plaintiff's MRIs and myelograms showed some degenerative disease, but no evidence of a herniated disk or spinal stenosis. (R.189.) Dr. Chirls further stated that Plaintiff's reflexes were all normal and that she had no motor or sensory deficit. Id. He noted some limitation in motion of the cervical but that for a patient of Plaintiff's age the limitation was not excessive. Id. Dr. Chirls opined that

5

Plaintiff did not meet or equal Listing 1.04A, B, or C.  (R.190.)  Dr. Chirls observed that the myelogram revealed a large left paramedian lateral disc herniation, but that the impression was degenerative disc disease.  (R.190-91).  He stated it was possible that the herniation noted in the myelogram could cause some pain going down the leg.  (R.191-93.)  Dr. Chirls acknowledged that there was a nerve root indentation at L4-5 and L5-S1.  (R.194.)  However, while the EMG agreed with the myelogram that there was involvement of L5, the myelogram did not agree with the EMG which indicated root irriation at S1 while there was no such indication on the myelogram.  (R.195.)

After reviewing the available evidence, the ALJ found Plaintiff was not disabled.  He stated that "at all times relevant herein, the claimant has retained the residual functional capacity to perform a full range of light work" and furthermore "could return to [her] occupation [as a telephone operator] as she performed it."  (R.20.)  In addition, the ALJ made the following findings:

1. The claimant meets the non-disability requirements for a period of disability and [DIB] set forth in Section 216(I) of the Social Security Act and is insured for benefits through the date of this decision.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimants back disorder is a 'severe' impairment, based on the requirements in the Regulations (20 CFR §§ 404.1520(c)).

4. This medically determinable impairment does not meet or medically equal any of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The undersigned finds the claimant's allegations regarding his[sic] limitations are not totally credible for the reasons set forth in the body of the decision.

6. The evidence indicates that the claimant has retained the residual functional capacity to perform light work.  (20 CFR §404.1527.)

7. The claimant's past relevant work as a telephone operator did not require the performance of work-related activities precluded by her residual functional capacity (20 CFR §§ 404.1565).

8. The claimant's medically determinable back disorder does not prevent the claimant from performing her past relevant work.

10. The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of this decision (20 CFR §§ 404.1520(e)).

(R. 20-21).  Plaintiff now raises three arguments in support of his appeal:

1.  The ALJ wrongly evaluated the medical evidence in that Plaintiff meets a listed impairment in Appendix 1.
2.  The ALJ erred in finding that Plaintiff can perform the full range of light work
3.  The ALJ's evaluation of Plaintiff's subjective complaints failed to comply with the Commissioner's regulatory mandates.

The Commissioner contends the ALJ's decision is supported by substantial evidence and should not be disturbed.

## II.  Standard of Review

A reviewing court must uphold the Commissioner's factual decisions if they are supported by "substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied sub nom. Williams v. Shalala, 507 U.S. 924 (1993).

"Substantial evidence" means more than "a mere scintilla."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

Id.  Some types of evidence will not be "substantial."  For example,

> [a] single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence.  Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g. that offered by treating physicians) – or if it really constitutes not evidence but mere conclusion.

Wallace v. Sec'y of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983) (quoting Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)).  The ALJ must make specific findings of fact to support his ultimate conclusions.  Stewart v. Secretary of HEW, 714 F.2d 287, 290 (3d Cir. 1983).  "Where the ALJ's findings of fact are supported by substantial evidence, the [reviewing court] is

7

bound by these findings, even if [it] would have decided the factual inquiry differently." <u>Fargnoli v. Massanari</u>, 247 F.3d 34, 35 (3d Cir. 2001). Thus, substantial evidence may be slightly less than a preponderance. <u>Stunkard v. Sec'y of Health & Human Servs.</u>, 841 F.2d 57, 59 (3d Cir. 1988).

"The reviewing court, however, does have a duty to review the evidence in its totality." <u>Schonewolf v. Callahan</u>, 972 F. Supp. 277, 284 (D.N.J. 1997) (citing <u>Daring v. Heckler</u>, 727 F.2d 64, 70 (3d Cir. 1984)). In order to review the evidence, "a court must 'take into account whatever in the record fairly detracts from its weight.'" <u>Id.</u> (quoting <u>Willibanks v. Sec'y of Health & Human Servs.</u>, 847 F.2d 301, 303 (6th Cir. 1988)). The Commissioner has a corresponding duty to facilitate the court's review: "[w]here the [Commissioner] is faced with conflicting evidence, he must adequately explain in the record his reasons for rejecting or discrediting competent evidence." <u>Ogden v. Bowen</u>, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing <u>Brewster v. Heckler</u>, 786 F.2d 581 (3d Cir. 1986)). As the Third Circuit has held, access to the Commissioner's reasoning is indeed essential to a meaningful court review:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

<u>Gober v. Matthews</u>, 574 F.2d 772, 776 (3d Cir. 1978) (quoting <u>Arnold v. Sec'y of Health, Educ. & Welfare</u>, 567 F.2d 258, 259 (4th Cir. 1977)). "[The reviewing court] need[s] from the ALJ not only an expression of the evidence []he considered which supports the result, but also some indication of the evidence which was rejected." <u>Cotter v. Harris</u>, 642 F.2d 700, 705 (3d Cir. 1981). Without such an indication by the ALJ, the reviewing court cannot conduct an accurate

review of the matter; the court cannot determine whether the evidence was discredited or simply ignored.  See Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citing Cotter, 642 F. 2d at 705); Walton v. Halter, 243 F.3d 703, 710 (3d Cir. 2001).  "The district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams, 970 F.2d at 1182 (citing Early v. Heckler, 743 F.2d 1002, 1007 (3d Cir. 1984)).

**A.  The Five-Step Analysis for Determining Disability**

A claimant's eligibility for benefits is governed by 42 U.S.C. § 1382.  Under the Social Security Act ("Act"), a claimant is eligible for benefits if she meets the income and resource limitations of 42 U.S.C. §§ 1382a & 1382b, and demonstrates that she is disabled based on an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  A person is disabled for these purposes only if his physical or mental impairments are "of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 1382c(a)(3)(B).

Social Security regulations set forth a five-step, sequential evaluation procedure to determine whether a claimant is disabled.  20 C.F.R. § 404.1520.  For the first two steps, the claimant must establish (1) that she has not engaged in "substantial gainful activity" since the onset of the alleged disability, and (2) that she suffers from a "severe impairment" or "combination of impairments."  20 C.F.R. § 404.1520(a)-(c).  Given that the claimant bears the burden of establishing these first two requirements, her failure to meet this burden automatically

9

results in a denial of benefits, and the court's inquiry necessarily ends there.  Bowen v. Yuckert, 482 U.S. 137, 146-47 n.5 (1987) (delineating the burdens of proof at each step of the disability determination).

If the claimant satisfies her initial burdens she must provide evidence that her impairment is equal to or exceeds one of those impairments listed in Appendix 1 of the regulations ("Listing of Impairments").  20 C.F.R. § 404.1520(d).  Upon such a showing, she is presumed to be disabled and is automatically entitled to disability benefits.  Id.  If she cannot so demonstrate, the benefit eligibility analysis requires further scrutiny. The fourth step of the analysis focuses on whether the claimant's residual functional capacity sufficiently permits her to resume her previous employment.  20 C.F.R. § 404.1520(e).  If the claimant is found to be capable to return to her previous line of work, then she is not "disabled" and not entitled to disability benefits.  Id.  Should the claimant be unable to return to his previous work, the analysis proceeds to step five.  At step five, the burden shifts to the Commissioner to demonstrate that the claimant can perform other substantial, gainful work.  20 C.F.R. § 404.1520(f).  If the Commissioner cannot satisfy this burden, the claimant shall receive social security benefits.  Yuckert, 482 U.S. at 146-47 n.5.

**B. The Record Must Provide Objective Medical Evidence**

Under the Act, proof of a disability requires objective, medical evidence.  "An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require."  42 U.S.C. § 423(d)(5)(A). Additionally, "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section."  Id.  Specifically, a finding that one is disabled requires

> medical signs and findings, established by medically acceptable
> clinical or laboratory diagnostic techniques, which show the
> existence of a medical impairment that results from anatomical,
> physiological, or psychological abnormalities which could
> reasonable be expected to produce the pain or other symptoms
> alleged and which, when considered with all evidence required to be
> furnished under this paragraph . . . would lead to a conclusion that
> the individual is under a disability.

Id.; see 42 U.S.C. § 1382c(a)(3)(A) (defining a disabled person as one who is "unable to engage in

any substantial gainful activity by reason of any medically determinable physical or mental

impairment . . .").  Furthermore, S.S.R. 96-7p provides that

> The adjudicator must evaluate the intensity, persistence and limiting
> effects of the [claimant's] symptoms to determine the extent to
> which the symptoms limit the individual's ability to do basic work-
> related activities. To do this, the adjudicator must determine the
> credibility of the individual's statements based on consideration of
> the entire case record. The requirement for a finding of credibility is
> found in 20 C.F.R. § 404.1529(c)(4) and § 416.929(c)(4).

Nevertheless, a claimant's symptoms, "such as pain, fatigue, shortness of breath, weakness, or

nervousness, will not be found to affect . . . [one's] ability to do basic work activities unless

medical signs or laboratory findings show that a medically determinable impairment(s) is

present."  20 C.F.R. § 404.1529(b); see Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999)

(rejecting claimant's argument that ALJ failed to consider his subjective symptoms where ALJ

made findings that complaints of pain and symptoms were inconsistent with objective medical

evidence and claimant's hearing testimony); Williams, 970 F.2d at 1186 (denying claimant

benefits where claimant failed to proffer medical findings or signs that he was unable to work);

Green v. Schweiker, 749 F.2d 1066, 1069-70 (3d Cir. 1984) (emphasizing that "subjective

complaints of pain, without more, do not in themselves constitute disability").

11

### III. Discussion

**A.  Step Three of the Sequential Evaluation**

Plaintiff argues the ALJ failed to articulate why Plaintiff's impairments did not match or equal a listed impairment. Specifically, Plaintiff contends that the ALJ ignored the findings of Plaintiff's treating and examining physicians and substituted his own opinion.  (Pl. Br. at 21.) The Commissioner contends that the ALJ considered each medical opinion of Plaintiff's treating and examining physicians along with the opinions of the consultative examiner, medical expert and State agency medical consultant.  (Def. Br. at 15.)

In his decision, the ALJ found that the medical evidence indicated Plaintiff's impairment was "'severe' within the meaning of the Regulations but not "severe" enough to meet or medically equal, either singly or in combination to, one of the impairments listed in Appendix I, Subpart P, Regulations No. 4."  (R.17).  Plaintiff claims that in making this finding, the ALJ failed to explore whether Plaintiff's disability was of Listing-level severity.  (Pl. Br. at 17).  Plaintiff relies upon Livingston v. Califano, 614 F.2d (3d. Cir. 1981), for support for the proposition that failure to explore whether the claimant's disability falls within one of the per se categories of Appendix I is an inadequate discharge of the ALJ's duty to develop the record and mandates remand.  The Court, however, disagrees with Plaintiff's contention that the ALJ failed to explore whether Plaintiff's disability was of Listing-level severity.  Rather, the record indicates that the ALJ considered all the available medical opinions.

Plaintiff claims that her impairment meets or equals the medical criteria of Listing § 1.04, "Disorders of the Spine."

Section 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal

arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root or the spinal cord.

A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor-loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or relext loss and, if there is involvement of thelower back, psititve straight-leg raising test (sitting and supine)...

20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.04A.

The ALJ noted that there was evidence of disc herniation, but no evidence of motor loss accompanied by sensory or reflex loss.  (R.17.)  The ALJ's findings are supported by substantial evidence.  First, in his August 12, 2001 report,  Dr. Friedman noted that Plaintiff's strength was intact and her sensation was normal.  (R.142.)  In that same report, he noted that deep tendon reflexes of the biceps, triceps and brachial radialis were physiologic, and that while Plaintiff walked with a limp that favored her left leg, her reflexes were symmetrical and of good quality, and there was no impairment of strength.  Id.  Also, her cervical spine had a normal ROM with no muscular spasm or vertebral tenderness.  Id.  Although movement in the thoracic spine was somewhat limited, Plaintiff had full ROM in the shoulders, wrists, elbows, and hands.  Id.

Second, the ALJ's findings are supported by the report of Dr. Sawicki, dated April 9, 2003.  Dr. Sawiki noted that Plaintiff's gait was normal.  (R.156-159).  Further, there was no paraspinal tenderness noted upon examination of the cervical spine.  Id.  The claimant was able to sit, perform a squat, stand on toes and heels and her muscle strength was at 5/5.  Id.  There was full ROM of the hips in forward flexion and backward extension.  Id.

Third, Dr. Chirls assessed that Plaintiff's reflexes and motor strength were normal in the upper and lower extremities and she had no sensory defects.  Also, he stated that Plaintiff's MRIs

and myelograms showed some degenerative disease, but no evidence of a herniated disk or spinal stenosis.  (R.189.)

Plaintiff claims the ALJ overlooked the results of an EMG taken December 21, 2002. Plaintiff's cites to Dr. Friedman's progress notes of January 1, 2003, wherein he observed that the EMG showed increased polyphasic potentials in the left biceps, left triceps and left cervical paraspinals with fibrillation potentials and positive sharp waves in the paraspinals indicative of C7 nerve root irritation.  (R.145.)  However, under Section 1.04 nerve root compression must be accompanied by sensory or reflex loss, criteria which the evidence did not support.

The burden is upon Plaintiff to show that her impairments were severe enough to satisfy the criteria of a listed impairment.  <u>Sullivan v. Zebley</u>, 493 U.S. 521, 530 (1990).  Here, the ALJ made sufficient findings that permit the Court to conduct a meaningful judicial review so there is no need to remand for further development as Plaintiff requests.  The ALJ articulated his findings to support his conclusion that Plaintiff did not satisfy step three.  Accordingly, the ALJ's decision on step three is upheld.

### B. Step Four of the Sequential Evaluation

Plaintiff argues that the ALJ erred in finding that Plaintiff had the residual functional capacity to perform a full range of light work.  The Commissioner counters that the ALJ's decision is supported by substantial evidence.

The fourth step of the analysis focuses on whether the claimant's residual functional capacity sufficiently permits him to resume his previous employment.  20 C.F.R. § 404.1520(e). If the claimant is found to be capable to return to his previous line of work, then he is not "disabled" and not entitled to disability benefits.  <u>Id</u>.  A comparison between the claimant's

14

residual functional capacity and the requirements of his past relevant work is necessary to satisfy

step four.  20 C.F.R. § 404.1520(e)-(f); <u>Burnett v. Commissioner of Social Security</u>

<u>Administration</u>, 220 F.3d 112, 120 (3d Cir. 2000).

In the case at hand, after analyzing all the available evidence, the ALJ wrote:

Accordingly, the undersigned finds that at all times relevant herein, the claimant has retained the residual functional capacity to perform a full range of light work (20 CFR 404.1567(b)).  She has therefore been capable of lifting and carrying objects weighing up to 20 pounds occasionally, and 10 pounds frequently.  She has also been able to sit, stand, and/or walk for a total of 6 hours during an eight-hour workday.  The State Agency medical consultants at the prior stages of administrative review also found that the claimant has retained the exertional ability to perform light work. (Exhibit 11F.)

...The evidence in this case establishes that the claimant has past relevant work experience as a telephone operator.  Based on the claimant's "Work History Report" (Exhibit 3E); her testimony; and the Dictionary of Occupational Titles (DOT) code #235.662-002, the job of a telephone operator is performed at the sedentary exertional level.

Based upon a residual functional capacity for light work, the claimant could return to her past relevant work as a telephone operator.  The evidence establishes that the claimant could return to this occupation as she performed it (Exhibit 3E and hearing testimony).  In addition, the claimant has the ability to do this job as it is generally performed in the national economy.

Despite the above passage, Plaintiff contends the ALJ's findings were not supported by medical

evidence and that the ALJ erred as a matter of law in finding that Plaintiff could perform the full

range of light work.[1]

---

[1]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."  20 C.F.R. § 404.1567(b).

15

In his decision, the ALJ noted that he considered Plaintiff's Work History Report. (R.72.) In this report, Plaintiff stated that "at work I sit at a computer answering cust. and putting through calls." Plaintiff also indicated that her job required her to sit for six hours per day and never required any lifting or carrying.

The ALJ"s decision was also supported by the findings of Dr. Sawicki and the observations of Dr. Friedman. Dr. Friedman observed that although Plaintiff walked with a limp, her reflexes were symmetrical and of good quality and there was no impairment of strength. (R.142.) Dr. Sawicki observed that Plaintiff's gait was normal and she was able to perform transfers. (R 156-7.) Also, her muscle strength was at 5/5. Id.

Plaintiff contends that the ALJ's reliance upon the State Agency medical consultant's RFC assessment was in error. (Pl. Br. at 23.) However, State agency medical consultants are qualified experts in the field of Social Security disability, and an ALJ is entitled to rely upon their opinions in issuing decisions. Plaintiff's reliance on Parks v. Chater, 1995 U.S. Dist. Lexis 13068 (E.D. Pa. 1995) for support of this contention is misguided. In Parks, State agency RFC assessment at issue was an unsupported "fill in the blanks" form. Parks, 1995 WL 505956 at *1. Here, the RFC contained detailed handwritten notes that were based on the thorough written report of Dr. Sawicki, and thus Parks is not applicable.

In the RFC report, Dr. Pineda found that Plaintiff could stand or walk for six hours in an eight-hour workday, sit for six hours, frequently lift ten pounds, occasionally stoop, kneel, crouch, crawl, and maintain balance, and climb ramps/stairs. (R.73). Plaintiff did not have any manipulative, visual, communicative, or environmental limitations. Id.

16

The available credible evidence demonstrates that Plaintiff can perform light work and is capable of doing such in her former employment.  The ALJ properly articulated his findings and how they led him to conclude that Plaintiff's residual functional capacity permitted her to perform her past relevant work.  The ALJ's decision with regard to step four is supported by substantial evidence.

## C. Subjective Complaints

Plaintiff claims that the ALJ failed to give credence to Plaintiff's subjective complaints. Plaintiff further asserts that the ALJ failed to apply the correct legal standard concerning pain. The Commissioner contends that the ALJ considered Plaintiff's subjective complaints and applied the correct legal standard.

The ALJ stated:

The claimants subject allegations are not entirely credible.  It is noted that the claimant has never been hospitalized for her back condition.  The nature of her treatment has been conservative, at best, involving courses of physical therapy, one epidural injection, anti-inflammatories, and some pain medication.  The claimant testified that she is unable to sit for any lengnth of time, however, the medical evidence fails to substantiate such a claim.  The claimant also testified that she had constant pain down the back side of her leg.  Dr. Chirls, the impartial medical expert, testified the claimant's complaints of pain down the back side of her left leg would not result from a L5 nerve root impingement.  Thus, the evidence does not support this complaint as well.

(R.20.)  Contrary to Plaintiff's contention that the ALJ substituted his own medical opinion, the ALJ's decision comports with the weight of the medical evidence. The Commissioner correctly point out that under 20 C.F.R. § 404.1529(c), when a medically determinable impairment exists, objective medical evidence must be considered in determining whether disability exists.  Further, if a plaintiff's symptoms suggest a greater restriction than can be demonstrated by objective

17

evidence alone, the ALJ shall give consideration to other factors, including subjective complaints. 20 C.F.R. § 404.1529(c)(3).

The ALJ determined here that the objective evidence of record did not substantiate Plaintiff's claims to the extent alleged. Because a Plaintiff must put forth more than just subjective complaints of pain, the ALJ did not err in not giving Plaintiff's subjective complaints great weight. Further, the ALJ made specific findings in his decision regarding Plaintiff's credibility. As such, the Court finds that the ALJ's decision to give little weight to Plaintiff's subjective complaints was supported by substantial evidence.

## IV.  Conclusion

For the foregoing reasons, the Court concludes that substantial evidence supports the ALJ's factual findings and thus affirms the Commissioner's final decision denying benefits for Plaintiff.


Date: March 31, 2006                                  S/   Dennis M. Cavanaugh
                                                       Dennis M. Cavanaugh, U.S.D.J.

Orig:   Clerk
cc:     All parties
        File